IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORKFOLK DIVISION

**UNITED STATES OF AMERICA**

v.                                                                  Criminal Action No. 2:05cr1

**LITONIA VICTORIA MOSELEY,**

        **Defendant.**

**ORDER and OPINION**

This matter came before the court on June 28, 2005 for a hearing regarding the issue of the defendant's competence to stand trial and on the government's Motion to Allow Involuntary Medication of the defendant. The defendant appeared in person with her counsel. For the reasons to follow, as well as those stated on the record during the hearing, the court finds the defendant to be competent to stand trial and denies the government's motion.

I. Procedural History

On January 11, 2005, a federal grand jury sitting in the Eastern District of Virginia returned an indictment against the defendant charging her with numerous counts of mail fraud, wire fraud, bank fraud and the false representation of a social security account number. The defendant was subsequently arrested on January 19, 2005, and the Federal Pubic Defender was appointed to serve as her counsel.

On April 15, 2005, the defendant filed a Motion to Determine Competency of the Defendant. On April 18, 2005, the defendant submitted a Notice of Intent to Rely on Insanity Defense and to Present Expert Testimony of her Mental Condition pursuant to Federal Rule of

Criminal Procedure 12.2. In support of the motion to determine the defendant's competency, the defendant's counsel averred that the defendant had been diagnosed with Bipolar Disorder and that she has twice been hospitalized due to her mental illness. The defendant's motion reported that on April 9, 2005, the defendant was apparently transferred to the medical unit of the Chesapeake City Jail as a result of erratic behavior. The defendant's counsel was unable to meet with the defendant in this condition. Additionally, the jail psychologist informed the defendant's counsel that the defendant had stopped taking her medication and was currently delusional. The psychologist further explained that the defendant appeared to be in a manic episode that could last anywhere from one week to six months.

The court held a hearing on the defendant's motion to determine competency on April 18, 2005. While the defendant was initially present with counsel, her erratic behavior was disruptive to the court proceedings and the defendant was removed from the courtroom. As a result of the defendant's motion and as stated on the record during the April 18, 2005 hearing, the court determined that reasonable cause existed to believe that the defendant might be suffering from a mental disease or defect rendering her mentally incompetent to the extent that she is unable to understand the nature and consequences of the proceedings against her, or to assist properly in her defense. See 18 U.S.C.A. § 4241(a). At this hearing, the government also formally moved for a determination of insanity pursuant to 18 U.S.C. § 4242. Consequently, the court, pursuant to the provisions of 18 U.S.C. §§ 4241(a) and 4242(a) and Federal Rule of Criminal Procedure 12.2, entered an order on April 18, 2005, requiring the defendant to submit to a psychiatric examination pursuant to 18 U.S.C. § 4247(b) and (c).

The defendant was sent to the Metropolitan Correctional Center in New York, New York

where a report was prepared assessing her competency to stand trial and her mental state at the time of the alleged offenses. Copies of this report ("the MCC report") were provided to the court and to counsel for the government and the defendant. The court placed the MCC report under seal upon its receipt on June 14, 2005.

## II. Discussion

### A. Competency to Stand Trial

The MCC report opined that although the defendant does present a mental disease under the law in the form of Bipolar Disorder with Psychotic Features, she does possess a rational and factual understanding of the proceedings against her, has the capacity to assist legal counsel in her defense and can make decisions regarding legal strategy. The MCC report concluded that the defendant is currently competent to stand trial. The court observes that in the body of the MCC report, reference is made to the defendant's regimen of psychiatric medication and the beneficial effect of this medication on issues relating to her competency. It is implicit in the MCC report that the defendant's competency is tied to her taking the medication that has been prescribed to her.

During the hearing on June 28, 2005, counsel for both the defendant and the government concurred with the conclusion of the MCC report as to the defendant's competency. Counsel for the defendant did proffer to the court he still has some concerns over the defendant's mental state, but that these concerns do not impact the competency assessment. Counsel for the defendant informed the court that he had been successfully able to consult with the defendant and that she was currently able to assist in her defense. The court also notes, as it did on the record during the hearing, that the defendant's behavior and demeanor presented a vast improvement

over her last appearance on April 18, 2005. The court observed the defendant to be attentive, respectful and fully able to comport herself in the required manner. Accordingly, based on the findings contained in the MCC report, the concurrence of counsel, and for the reasons stated on the record, the court finds that the defendant is not presently suffering from a mental disease or defect that renders her unable to understand the nature and consequences of the proceedings against her or to assist properly in her defense. See 18 U.S.C. § 4241(a).

      B. Motion to Allow Involuntary Medication

On June 21, 2005, the government filed a Motion to Allow Involuntary Medication of the defendant. The government requests an order authorizing and directing the Sheriff of the Chesapeake City Jail and his designated staff, or the sheriff or administrator and designated staff of any other facility where the defendant is being or may be held in custody pending and during trial, to involuntarily administer currently prescribed medication to the defendant for her BiPolar Disorder if, and only if, the defendant refuses to take such medication. The defendant filed an opposing response to this motion on June 27, 2005.

The government observes that the MCC report describes that the defendant, during her period of evaluation, was prescribed Lithium and Risperdal for BiPolar Disorder and that her evaluator recommended that she continue to receive this prescribed medication. The understandable concern of the government is that the defendant will again refuse to take her medication as her trial date approaches, as she apparently did prior to the court's first hearing on this matter on April 18, 2005. The defendant argues, however, that this issue is not ripe for judicial determination because there has been no determination that the defendant is not competent to stand trial and the defendant is not refusing to take her prescribed medication at

present. Additionally, the defendant argues that the government has failed to meet its burden to demonstrate that forced medication is constitutionally proper in this case.

In support of its motion, the government relies on the Supreme Court's decision in <u>Sell v. United States</u>, 539 U.S. 166 (2003). In <u>Sell</u>, the Supreme Court considered the question: "Does forced administration of antipsychotic drugs to render [a defendant] competent to stand trial unconstitutionally deprive him of his 'liberty' to reject medical treatment." <u>Sell</u>, 539 U.S. at 177. The Supreme Court first recognized that a defendant has a significant constitutionally protected liberty interest in avoiding the unwanted administration of antipsychotic drugs. <u>See</u> <u>id.</u> at 178 (citing <u>Washington v. Harper</u>, 494 U.S. 210, 221 (1990)). Despite this interest, the Supreme Court went on to hold that the Constitution does permit the government to "involuntarily administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render the defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive measures, is necessary significantly to further important governmental trial related interests." <u>Id.</u> at 179.

At the outset, the court does agree with the defendant that the government's request is somewhat premature. It is implicit in the analysis articulated in the <u>Sell</u> decision, as explained further herein, that prior to entertaining a motion to allow involuntary medication, there must exist both a judicial determination that the defendant is not competent to stand trial and evidence that the defendant is currently refusing to take medication that would restore him or her to competency. <u>See</u> <u>Sell</u>, 539 U.S. at 177. Neither precondition has been met in the instant case. The court has found the defendant is currently competent to stand trial, and there is no evidence

that she is currently refusing to take her prescribed medication.

The court certainly recognizes, however, that the defendant's competence could be affected were she to refuse to take her prescribed medication. Thus, the government's concern is legitimate. Even assuming, however, that this matter were ripe for judicial determination, the court does not believe that the government has met its burden under Sell of establishing that involuntary medication is appropriate in this case.

In Sell, the Supreme Court separated the relevant constitutional analysis into a four prong inquiry, which the government bears the burden to establish. First, a court must find that important governmental interests are at stake. Sell, 539 U.S. at 180. The Supreme Court indicated that the government's interest in bringing to trial an individual accused of a serious crime is important - whether the crime is one against a person or one against property. See id. at 180. The Sell court went on to clarify, however, that courts "must consider the facts of the individual case in evaluating the Government's interest in prosecution. Special circumstances may lessen the importance of that interest." Id. If the defendant's failure to take drugs voluntarily would mean lengthy confinement in an institution for the mentally ill, this might diminish the risks that ordinarily attach "to freeing without punishment one who has committed a serious crime." Id. Also, if the defendant has been imprisoned for a long time already, this may also undermine the strength of the need for prosecution. See id.

In this case, this first prong appears to have been met. The defendant is charged in a thirty-three (33) count indictment, which includes a forfeiture count, with crimes of mail fraud, wire fraud, bank fraud and the false representation of a social security number. Each of the mail and wire fraud charges carry a maximum possible penalty of twenty (20) years imprisonment and

the bank fraud charge carries a possible penalty of thirty (30) years. See 18 U.S.C. §§ 1341, 1343, 1344. As the government correctly recognizes, the United States Court of Appeals for the Fourth Circuit has recently held that a "serious crime," for the purposes of the Sell analysis, focuses on the maximum possible penalty for the charged offense, rather than the likely actual sentence the defendant might receive. See United States v. Evans, 404 F.3d 227, 237 (4th Cir. 2005). Moreover, no special circumstances appear to be at play that would undermine the government's interest in prosecuting the defendant. The defendant has not been incarcerated for a lengthy amount of time, and there is no indication that the defendant might be civilly committed. See id. at 239 (finding that no special circumstances override government's interest in prosecuting defendant on serious charges).

Second, the court must conclude that involuntary medication will significantly further the government interest. See Sell, 539 U.S. at 181. In addressing this second prong, the Sell court described that the court "must find that administration of the drugs is substantially likely to render the defendant competent to stand trial. At the same time, it must find that the administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." Sell 539 U.S. at 181. The government argues that the MCC report permits the conclusion that the prescribed medication will further the government's interest. As the court discusses further in its explanation of the fourth Sell prong, the information in the MCC report does not permit this explicit finding. Although the MCC report connects the defendant's taking of her prescribed medication with her ability to assist counsel and comport herself in an appropriate manner, the conclusion of the MCC report does not indicate that the defendant's

competence is dependent upon her taking the prescribed drugs. Moreover, no discussion of any side effects of these drugs is provided.

 Third, the court must conclude that involuntary medication is necessary to further the government's interests. Sell, 539 U.S. at 181. In looking to whether the forced medication is necessary, the court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results. Sell, 539 U.S. at 181. "And the court must consider less intrusive means for administering the drugs, e.g., a court order to the defendant backed by the contempt power, before considering more intrusive methods." Id.

 The government endeavors to meet this third prong by claiming that the defendant's failure to take her prescribed medication has a severe adverse effect on her condition and that it appears that without taking this medication, it is unlikely that the defendant will remain competent to stand trial. The government then states that there is no indication that any alternative, less intrusive treatment is likely to achieve the same results.

 The government's argument on this prong is presumptive and not fully supported by the MCC report, which, while concluding that the defendant's current psychiatric medication regimen is effective, does not discuss forced medication or any alternative treatment methods. The MCC report does state that the defendant is cooperative and can assist her counsel and can participate in court proceedings if, and as a result of being, properly medicated. Id. It appears, however, that this medication has been voluntarily taken by the defendant.

 The problem with the government's effort to address this third prong is that the evaluators have determined that the defendant is competent to stand trial without a consideration of whether forced medication is necessary. Although the MCC report certainly indicates a link between the

defendant taking her medication and her capacity to assist her counsel and to maintain proper courtroom behavior, such that medication itself may be necessary, there is no indication that the defendant refused to take the medication prescribed her at MCC or that forced medication, as opposed to some alternative, less intrusive means, is the only means of rendering the defendant competent.  Thus, at this stage, without knowing whether the defendant will refuse to take her medication and whether some other means, such as a contempt order, would work to achieve her compliance, it is not clear whether forced medication is, in fact, necessary.  See Sell, 539 U.S. at 181.  Additionally, the government has failed to meet its burden of explaining why less intrusive means, such as a court order, would not suffice to ensure the defendant's competence.  See Sell, 539 U.S. at 181.

Fourth, the court must conclude that administration of the drugs is medically appropriate, i.e., in the patient's best interest in light of his medical condition.  Sell, 539 U.S. at 181.  The government concludes that the forced administration of Lithium and Risperdal is medically appropriate because the MCC report included the recommendation that the defendant continue to receive these medications.  Again, this recommendation was not made in the context of administering these medications involuntarily.

Moreover, as referenced above, the government provides no showing as to any side effects of these drugs with respect to the defendant.  Although the MCC report indicates that the defendant's medical regimen (without a specification of what this regimen includes) does make her cooperative and able to assist her counsel, there is no explanation of any side effects and the court cannot include that the absence of such discussion in the MCC report truly means that there are no side effects associated with the defendant taking these drugs.  See Sell, 539 U.S. at 185.

9

The court's determination that the government has failed to make the complete showing required by <u>Sell</u> is informed by the recent decision of the Fourth Circuit in <u>United States v. Evans</u>, 404 F.3d 227 (4th Cir. 2005). In applying <u>Sell</u>, the Fourth Circuit determined that "[t]he government must propose a course of treatment in which it specifies the particular drug to be administered." <u>Evans</u>, 404 F.3d at 240. "Without at least describing the proposed course of treatment, it is tautological that the Government cannot satisfy its burden of showing anything with regards to that treatment, much less that it will 'significantly further' the Government's trial-related interests and be 'medically appropriate'" for the defendant. <u>Id.</u> The MCC report does note that the defendant's current psychiatric medication regiment is effective and that the defendant is cooperative and able to assist counsel if properly medicated. While the MCC report also notes that the defendant was prescribed Lithium and Risperdal for BiPolar Disorder, there is no direct explanation of how these drugs "significantly further" the government's interest and are "medically appropriate" for the defendant. <u>See id.</u>

The Fourth Circuit has held that "for the district court even to assess whether involuntary medication is constitutionally permissible under <u>Sell</u>'s second and fourth factors, the government must set forth the particular medication, including the dose range, it proposes to administer" to restore the defendant to competency. <u>See Evans</u>, 404 F.3d at 241. The government has not specified a dose range and there is no evidence in the MCC report that would support any suggested range. At the hearing on June 28, 2005, the government argued that the defendant should receive whatever dosage had been prescribed to her. As the court has noted, however, any prescriptions issued to the defendant by mental health professionals at the Metropolitan Correction Center were not made within the unique context of the issue of forced medication.

10

Furthermore, "the government must also relate the proposed treatment plan to the individual defendant's particular medical condition." Id. The Evans court concluded:

> In other words, the government, considering all of the particular characteristics of the individual defendant relevant to such a determination, must first show that the treatment plan will 'significantly further' its interests. It must do so by demonstrating that the proposed treatment plan, as applied to this particular defendant, is 'substantially likely' to render the defendant competent to stand trial and 'substantially unlikely' to produce side effects so significant as to interfere with the defendant's ability to assist counsel in preparing a defense. Second, the government, again considering all of the circumstances relevant to the particular defendant, must show that its proposed treatment plan is 'medically appropriate.' To do so, the government must spell out why it proposed the particular course of treatment . . . provide the estimated time the proposed treatment plan will take to restore the defendant's competence and the criteria it will apply when deciding when to discontinue the treatment, describe the plan's probable benefits and side-effect risks for the defendant's particular medical condition, show how it will deal with the plan's probable side effects, and explain why, in its view, the benefits of the treatment plan outweigh the costs of its side-effects.

Id. at 242.

As in the Evans case, it is apparent that the government's motion falls well short of this quite detailed standard of particularity. Again, this is likely so because the MCC report does not evaluate the advantages and disadvantages of forcibly administering medication to the defendant. An inference in the report that the defendant is cooperative and able to assist counsel so long as she takes the prescribed (but not detailed) medication does not address all of the requirements set forth in Sell as interpreted by the Fourth Circuit in Evans. From a constitutional standpoint, a recommendation of continued medication to be taken voluntarily is not the same as a recommendation of forced medication, which supplants the defendant's protected liberty interest in avoiding unwanted medications. See Sell, 539 U.S. at 178.

In summary, despite the significant interest of the government in proceeding to trial

against the defendant on serious charges, it does not appear to the court, at this point, that the government has satisfied its burden of showing a need for forced treatment sufficiently important to overcome the defendant's protected interest in refusing it, in view of the lack of evidence of the possible side effects, the possible alternatives, and the medical appropriateness of a particular course of antispsychotic drug treatment. See id. at 183. It is noteworthy that Sell and Evans, both approach the issue of forcible medication for competency purposes after an initial finding by a court that the defendant is not competent to stand trial. Moreover, both decisions described that expert testimony on the issue of forced medication, as opposed to the issue of general competence, was examined by those courts determining whether forced medication was necessary. See Sell, 539 U.S. at 173; Evans, 404 F.3d at 233. As no similar expert testimony has been presented in support of the government's motion, it may be that the current posture of this case does not permit the findings necessary to warrant forced medication.

It should also be noted that the Supreme Court, in Sell, emphasized that the foregoing analysis is to be applied only to determine the issue of competency to stand trial. "A court need not consider whether to allow forced medication for that kind of purpose, if forced medication is warranted for a different purpose, such as the purposes set out in [Washington v. Harper, 494 U.S. 210, 225 (1990)] related to the individual's dangerousness, or purposes related to the individual's own interests where refusal to take drugs puts his health gravely at risk." Sells, 539 U.S. at 181-82. "There are often strong reasons for the court to determine whether forced administration of drugs can be justified on these alternative grounds before turning to the trial competence question." Id. at 83.

The Sell court suggested that when the government has brought a motion seeking the

forced administration of drugs, the reviewing court should ordinarily determine whether the government seeks permission for forced administration of drugs on these other Harper-type grounds; and, if not, why not. Id. The government's motion does not identify any other grounds for forced medication other than the issue of competency. It should be noted that forced medication has been found constitutional on grounds of dangerousness in the prison environment, but this type of determination is normally initiated by an administrative determination by the BOP. See Harper, 494 U.S. at 225-226; United States v. Kourey, 276 F. Supp. 2d 580, 585 (S.D. W. Va. 2003) (heeding recommended course in Sell that court first consider whether a decision to forcibly medicate defendant was made on Harper grounds and finding that record did not indicate that it had been).

    While it does appear that there could be a dangerousness issue with respect to the reports of the defendant's behavior at the Chesapeake jail, it does not appear that this behavior has continued following the defendant's Metropolitan Correctional Center evaluation. Thus, the court, at present, must utilize the framework utilized in Sell rather than Harper. See Evans, 404 F.3d at 235 (noting that Sell provides framework of analysis when sole issue is that of competency). In doing so, and even assuming that this issue is ripe, the court finds that the government has not met its burden at this time.

    The court appreciates that the trial in this matter has been rescheduled to begin on October 17, 2005, which is some months away. Should either the issue of the defendant's competency and/or her willingness to take her prescribed medication arise anew in the period prior to trial, the court will schedule further proceedings as are necessary.

III. Conclusion

Accordingly, the court **FINDS** that the defendant is currently competent to stand trial. Additionally, the government's Motion to Allow Involuntary Medication is hereby **DENIED**. Pursuant to the defendant's prior waiver of the provisions of the Speedy Trial Act, the determination of the court that this case is a complex one and the court's finding, as stated on the record, that the ends of justice in continuing this matter outweigh the best interest of the public and the defendant in a speedy trial, the trial in this matter is rescheduled to begin at 10:00 a.m. on October 17, 2005.  See 18 U.S.C. § 3161(h).

The Clerk is **REQUESTED** to send a copy of this Order to counsel for the defendant and for the government.

It is so **ORDERED**.

/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

July 6th, 2005
Norfolk, Va.